In re Complaint Against "JUDGE ANONYMOUS"

No. COC–77–115.

Supreme Court of Oklahoma.

Oct. 10, 1978.

Rehearing Denied Nov. 13, 1978.

SIMMS, Justice:

Written complaint was filed with the Council on Judicial Complaints (Council) which alleged improper judicial conduct on the part of a District Judge of Oklahoma. Because the complaint still remains pending and unresolved before the Council, the legislative mandate of secrecy found in 20 O.S.1974 Supp., § 1658[1] will be observed in this opinion in that neither the names of the parties or their attorneys will be mentioned. The Judge against whom the complaint was lodged will be referred to as District Judge or Judge Anonymous. However, it is essential to the resolution of this controversy that certain testimony and events be recited so as to delineate the issues.

After written complaint was filed, the matter was set for hearing before the three-member Council. Judge Anonymous appeared in obedience to a subpoena with legal counsel. He was sworn as a witness to testify and the following proceedings are a part of the record:

"Q. (By lawyer for the Council) . . prior to your ascending the bench, did you have a law partner in the practice of law?

A. (Counsel for Judge Anonymous) I would at this time inform the Council, it is the desire of the defendant upon advice of counsel to decline to offer any oral testimony to any matters or occurrences occurring more than one year prior to this date on the grounds and for the reasons that it is the opinion of counsel and the witness that under the statutes of the State of Oklahoma, the Statute of Limitations controlling the acts or occurrences of matters to be covered by oral testimony before the Council on Complaints or before the Judiciary would be one year and in support thereof, I would state that we rely upon the Title 12, Section 95.

Q. Judge (Anonymous), you have heard the statement by your counsel, is that your statement as well?

A. That's correct, . . .

Q. I would at this time repeat my question to you, sir. Prior to your ascending the bench, did you have a partner in the practice of law?

A. Mr. (Attorney for the Council), on advice of counsel, for the reasons stated, I decline to answer that particular question respectfully."

The Chairman of the Council on Judicial Complaints then advised Judge Anonymous that his refusal to answer the question would subject him to contempt proceedings to enforce an answer. Again, the Judge

1. 20 O.S.1974 Supp., provides in part: " . . . All proceedings under this section shall be held in secrecy to the same extent as proceedings before a grand jury."

refused to answer on advice of counsel, whereupon the Council invoked the provisions of 20 O.S.1974 Supp., § 1658[2] and certified the matter to the Chief Justice of the Supreme Court. The Chief Justice, following procedural guidelines of § 1658, assigned the alleged contempt matter to a judge of a district court for trial and appropriate disposition.

Following a hearing on the contempt matter, the district judge to whom the matter was assigned said, "But in this case, the real question comes down in my judgment as to whether or not the Council on Judicial Complaints under Title 20, § 1658[3] can subpoena and require a respondent judge who has an accusation filed against him to appear before said Council and give testimony."

The assigned district judge held that, "In this particular case, the Council on Judicial Complaints had no right to subpoena the respondent judge in front of them to start with, and that being so, he didn't have to testify, he didn't have to be there in my judgment." Whereupon, Judge Anonymous was found not guilty of the contempt for the reasons above quoted, and for the further reason that in the opinion of the district judge, under all facts and circumstances, the refusal to answer by Judge Anonymous was not contemptuous.

The Council on Judicial Complaints perfected this appeal and argues that the proceedings before the Council are not criminal in nature and therefore the constitutional protections afforded a criminal defendant do not evolve to a member of the judiciary, so as to preclude that member from being called as a witness before the Council while he is under investigation. Additionally, Council argues that a judge, subject to investigation by the Council upon the authority of the Council being invoked by written complaint, can only refuse to answer on matters that may tend to incriminate him.

On the other hand, Judge Anonymous urges dismissal of the appeal for the reason that the same is not provided for by statute nor court rules; that the trial authority did not rule that the proceedings were criminal in nature; that the Council is without power to grant immunity, and therefore may not call as a witness a judge against whom complaint is made; and that his refusal to answer on advice of counsel, was not contemptuous because it was not a "willful disregard or disobedience of a public authority."

## RIGHT OF APPELLATE REVIEW BY THE COUNCIL FROM ADVERSE DECISION

Rule 1.10(c)(1), Rules of Appellate Procedure, 12 O.S. Ch. 15,—App. 2, provides in part: "An appeal . . . to review a sentence imposed for contempt of court occurring in a civil action or proceeding shall be brought in the Supreme Court . . ." Judge Anonymous urges that by reason of 12 O.S.1971, § 990, the above cited rule has the force and effect of statute. Section 990 provides: "The Supreme Court shall provide by court rules, which will have the force [and effect] of statute . . . the procedure to be followed for the completion and submission of the appeal taken hereunder." *Transok Pipe Line v. Darks, Okl.,* 515 P.2d 218, 219 (1973) is cited in support of the motion to dismiss. *Transok* holds that all appeals to the Supreme Court are governed by 12 O.S.1971, § 990. However, in *Transok*, we were dealing with a jurisdictional defect in the appeal by reason of failure to lodge the appeal within the time

---

2. 20 O.S.Supp.1974, § 1658, provides in part: "In the event of contemptuous refusal to obey its lawful orders, it may take such steps as are necessary to maintain order in its session; as to contempts not affecting the maintenance of order, it shall certify the matter to the Chief Justice of the Supreme Court, who shall assign the case for trial and appropriate disposition to a judge of a district court. . . . "

3. The Council shall promptly investigate all complaints received by it, and shall determine the proper disposition thereof, as provided in this Act. To that end, it shall have power to hold hearings, administer oaths or affirmations, receive testimony and other evidence, and issue or serve or cause to be served subpoenas requiring testimony or the production of books, records, papers or other tangible evidence.

provided by 52 O.S.1971, § 113. The appeal herein is timely brought.

The thrust of Judge Anonymous' proposition is simply that there was no *conviction* for contempt, therefore there could be no appeal.

■ We are not here concerned with a final order or judgment entered by the Council on Judicial Complaints, but we are asked to review a final order of a District Court. Appellate review from a final order or judgment of a district court is authorized by statute. 12 O.S.1971, § 990. While no appeal is specifically provided for from an adjudication of "not guilty" for contempt, nonetheless, Article VII, Sec. 4, Okl.Const., provides in part: "The original jurisdiction of the Supreme Court shall extend to a general superintending control over all inferior courts and all Agencies, Commissions and Boards created by law." While this Court has been conservative in exercising the full powers vested in it by Art. VII, § 4, *supra*, the exigencies of the circumstances in this case compel us to determine the issues now before us by granting appellate review of the judgment of the district judge assigned to hear the matter.

Appellate review is granted because we are treating a case of first impression and the judges of this state, as well as the Council on Judicial Complaints, must have definitive guidelines in order to function with consistency. Further, it is in the public interest to see that judicial integrity is preserved within Oklahoma by maintaining a viable agency where legitimate complaints concerning the conduct of any person occupying a position in the judicial branch of government may be efficiently and impartially investigated.

### NATURE OF PROCEEDINGS BEFORE THE COUNCIL ON JUDICIAL COMPLAINTS

Council complains that the trial court proceeded under the assumption that proceedings before the Council were criminal in nature and that the judge was entitled to the broad constitutional guarantees afforded a defendant in a criminal case. The judge counters that the record negates this purported assumption because the record is devoid of any reference by the trial court as to the proceedings being criminal in nature and neither is there any finding of the trial court to that effect.

■ A reading of 20 O.S.1974 Supp., § 1658, reflects: "The Council shall promptly *investigate* all complaints received by it, and shall determine the proper disposition thereof, as provided in this act. . . ." The dispositions of complaints available to the Council are limited. It may dismiss the complaint, or it may cause jurisdiction of the Trial Division of the Court on the Judiciary to be invoked through the Attorney General. See: 20 O.S.Supp.1974, § 1659. The Council is powerless to suspend or remove a judge from office; neither can it impose any sanction upon any member of the judiciary. The Council is not a body with authority to adjudicate any matter, but rather it is limited to *investigation* of judges against whom formal complaint is made.

■ We note that a criminal action is defined by 12 O.S.1971, § 7, as "one prosecuted by the State as a party, against a person charged with a public offense, for the punishment thereof." Perusal of the complaint filed against Judge Anonymous indicates there is no "public offense" therein involved, nor is he being prosecuted by the state as a party. Section 7, *supra*, negates the conclusion that the proceedings before the Council are criminal in nature. In distinguishing between criminal proceedings and sanctions imposed upon a member of the judiciary, the Court on the Judiciary of Oklahoma, Appellate Division, stated in *Sharpe v. State, Okl.Jud.*, 448 P.2d 301, 305 (1968); cert. den., 394 U.S. 904, 89 S.Ct. 1011, 22 L.Ed.2d 216:

"An examination of Article 7–A [Constitution of the State of Oklahoma] demonstrates unequivocally that proceedings thereunder are not criminal prosecutions. The jurisdiction of the court is limited to the removal with or without disqualification or the compulsory retirement of judges.

" * * *

"Their [Court on the Judiciary] sole object is to declare one who exercises judicial power to be unfit, on grounds quite distinct from criminal acts or omissions, to hold a judgeship.

" * * *

"In short, the essence of the sanction is not 'punishment' but present and future exclusion from office based on grounds bearing rational relationship to the interest of the state in the fitness of its judicial personnel."

As *Sharpe, supra,* dealt with the functions of the Court on the Judiciary, and might therefore be distinguishable from the functions of the Council on Judicial Complaints, we turn to other jurisdictions for a solution to the problem of the nature of the function of the council.

In 1968, Pennsylvania amended its constitution by adding Article V, Section 18, which provided for the creation of a Judicial Inquiry and Review Board to hear complaints, evaluate evidence, and make recommendations to the Pennsylvania Supreme Court concerning the suspension, removal, discipline, or compulsory retirement of justices or judges. A judge against whom a complaint was lodged, sought an injunction in Federal Court against the Supreme Court of Pennsylvania from considering a complaint made on recommendation of the Board. The judge alleged a deprivation of his Sixth and Fourteenth Amendment rights guaranteed to a criminal defendant. In *Keiser v. Bell, 332 F.Supp. 608 (E.D.Pa. 1971)* it was held:

"The proceedings of the Judicial Board are investigatory and advisory and are not binding upon the Supreme Court. No determination of criminal guilt is made, but merely a determination of the Judicial Board's view of the conformity of the subject of investigation to the state constitutional standards for judicial office. Similarly, the resulting Order of the Supreme Court does not operate as a sanction for criminal guilt but as a judgment on judicial fitness. *At most, the proceedings of the Judicial Board could be char-*

*acterized as quasi-judicial administrative hearings, and the Order of the Supreme Court as a judicial disciplinary order."* (emphasis added)

The case of *In the Matter of Edens, 290 N.C. 299, 226 S.E.2d 5 (1976),* involved a complaint against a judge before their Judicial Standards Commission and subsequent recommendation made to the Supreme Court of that state for censure of a judge. The Supreme Court of North Carolina affirmed the finding made by the Commission that:

" 'This proceeding is neither criminal nor civil in nature. It is an inquiry into the conduct of a judicial officer, the purpose of which is not primarily to punish any individual but to maintain due and proper administration of justice in our State's courts, public confidence in its judicial system, and the honor and integrity of its judges.' "

Also, in 1966, Maryland, by a vote of the people of that state, adopted a constitutional amendment creating a five-member Commission on Judicial Disabilities. The Maryland Constitutional Amendment was patterned after a "California Plan" and, is in material respects, the same as the law creating Oklahoma's Council on Judicial Complaints. The Supreme Court of Maryland in defining the nature of proceedings before their Commission, held that it was authorized to investigate complaints, take evidence, and determine if the facts would merit further action before a judicial tribunal. *In re Dienier, Md.App., 268 Md. 659, 304 A.2d 587 (1973),* cert. den. *Broccolino v. Maryland Commission on Judicial Disabilities, et al., 415 U.S. 989, 94 S.Ct. 1586, 39 L.Ed.2d 885.* The Maryland Court rejected constitutional attacks on the Commission similar to those raised here by Judge Anonymous and cited *Keiser v. Bell, supra,* with approval.

 We are of the opinion that the proceedings before the Council on Judicial Complaints are only investigatory in nature, as opposed to being adjudicatory in nature. The proceedings are not criminal proceedings and the constitutional guarantees afforded a defendant in a criminal case upon

which the Judge relies, are not applicable. It is not the Council on Judicial Complaints which imposes sanctions or punishment; that is left to another tribunal before which those constitutional guarantees are afforded an accused judge.

*CAN A JUDGE AGAINST WHOM COMPLAINT IS MADE BE COMPELLED TO APPEAR AND TESTIFY IN OBEDIENCE TO SUBPOENA ISSUED BY THE COUNCIL?*

We again turn to 20 O.S.Supp.1974, § 1658, and read:

"The Council shall promptly investigate all complaints received by it, and shall determine the proper disposition thereof, as provided in this act. To that end, it shall have power to hold hearings, administer oaths or affirmations, receive testimony and other evidence, *issue and serve or cause to be served subpoenas requiring testimony* or the production of books, records, papers or other tangible evidence . . ."

▇▇▇ We immediately note there is nothing in the cited statute specifically authorizing compulsory attendance pursuant to subpoena of a judge who is under investigation. On the other hand, we find nothing in the statutes which specifically exempts such a judge. We have held that the proceedings before the Council are not "criminal in nature" so as to extend to the judge under investigation the complete privileges and immunities guaranteed a defendant in a criminal case. In light of our holding, can it be successfully argued that under § 1658, the subject of a complaint before the Council may refuse to attend and may refuse to answer any questions. We think not.

This issue was passed on by the California Courts in *McComb v. Superior Court, etc., App., 68 Cal.App.3d 89, 137 Cal.Rptr. 233 (1977).* There, an 82 year old judge refused to appear for the taking of a deposition pursuant to order and subpoena of the Commission on Judicial Performance. The Commission petitioned the Superior Court for an order requiring the elderly judge to appear and testify. After being ordered to appear and testify by the Superior Court, the judge, in response to a show cause order, asserted his constitutional privilege not to be called as a witness and not to testify. Upon further refusal to appear and testify, the judge was adjudicated to be in contempt of court by the Superior Court.

We find the California Code, Gov.Code, section 68750, analogous to the provisions of our § 1658, in that California has empowered their Commission to administer oaths, to issue subpoenas for the attendance of witnesses, and to make orders for or concerning the inspection of books and records. The *McComb* court held:

"Accordingly, we hold that a judge who is the subject of proceedings 'which are neither criminal nor before a "court of justice" . . .' does not have the privilege afforded to a defendant in a criminal case to refuse to respond as a witness and to testify . . . ; he may be called upon to testify and can refuse only to disclose a matter that may tend to incriminate him."

Judge Anonymous also takes the position that because the Council is not empowered to grant immunity, it is without authority to subpoena him as a witness. The granting of immunity presupposes a refusal to testify on the grounds of self-incrimination. This Court held in *Oklahoma Dept. of Public Safety v. Robinson, Okl., 512 P.2d 128 (1973):*

"The privilege of a witness not to incriminate himself is not infringed by merely being called as a witness and compelled to take the oath. The privilege cannot be invoked to excuse the witness from appearing and taking the stand. The privilege of a witness not to incriminate himself is an option of refusal and is not a prohibition of inquiry (citing cases). In no event may the witness refuse to be sworn, *United States v. Romero, 249 F.2d 371, 375 (C.A.2d Cir. 1957)."*

The Supreme Court of the United States considered a similar proposition in *Communist Party v. Sub. Act. Cont. Bd., 367 U.S. 1, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961).* It was therein held by the Court that:

"[I]t is always true that one who is required to assert the privilege against self-incrimination may thereby arouse the suspicions of prosecuting authorities. Nevertheless, it is not and has never been the law that the privilege disallows the asking of potentially incriminating questions or authorizes the person of whom they are asked to evade them without expressly asserting that his answers may tend to incriminate him. (citing authorities)"

In the matter before us for review, there was no claim of privilege predicated upon self-incrimination. There was no request that immunity be granted. We find therefore that the argument of Judge Anonymous is without merit.

### THE SIXTH AMENDMENT RIGHTS OF CONFRONTATION OR CROSS–EXAMINATION

It was the import of the ruling by the trial judge that Judge Anonymous had been deprived of his Sixth Amendment right to confront and cross-examine witnesses who might offer testimony against him in the hearing before the Council. The testimony of witnesses was received by the Council out of the presence of the Judge.

■ As we have held, the proceedings before the Council are not criminal in nature. Sixth Amendment guarantees inure only to a defendant in a criminal prosecution and not applicable to non-criminal matter such as this investigating proceeding. See, e. g., *Sharpe v. State, supra; Keiser v. Bell, supra.*

### RIGHT OF THE WITNESS TO COUNSEL

Attorney for the Council urges upon us the proposition that because the proceedings are non-criminal, a judge under investigation who is compelled to attend in obedience to a subpoena should not be afforded his Sixth Amendment right to have an attorney present.

■ While the Council has cited cases from other jurisdictions tending to support their position, we feel that fundamental fairness and fair play dictate that Judge Anonymous be permitted to appear as a witness with counsel.

We believe that the function of the Council on Judicial Complaints is analogous in function to that of a grand jury in this State. 22 O.S.Supp.1974, § 340 provides that a witness under examination by a grand jury may have one attorney representing such witness present during the grand jury proceedings. Because the Council is an investigating body, much like the grand jury, we hold that a judge being investigated by the Council, who is subpoenaed to testify as a witness before the Council, may be accompanied by his attorney.

### THE STATUTE OF LIMITATIONS QUESTION

■ The Judge relies upon 12 O.S.1971, § 95 as grounds for refusal to answer the question concerning his prior relationship with a lawyer. He apparently relies upon the fourth subdivision of § 95, which relates to "an action upon a statute for penalty or forfeiture, except where the statute imposing it prescribes a different limitation."

Title 22, O.S.1971, § 1181.1, however, provides:

"All elective officers in the State of Oklahoma, including elective officers of the State and elective officers in each County, City, Town or School District of the State of Oklahoma, but excluding any elective officers liable to impeachment, shall be subject to removal from office in such manner and for such causes as now provided by law, *or as may be provided by law passed subsequent to this Act,* and any such officer or officers may be removed or ousted from office for any act or acts of commission or omission or neglect which may be committed, done or omitted *during the term in which such ouster or removal proceedings may be filed,* and any such officer or officers, may be removed or ousted from office for any act or acts of commission, omission or neglect committed, done or omitted *dur-*

*ing a previous or preceding term in such office.*" (emphasis added)

Because there exists a statute imposing a different limitation for penalty or forfeiture we find the limitations argument to be wholly without merit.

Additionally, the question put to the Judge concerning his relationship prior to his ascending the bench was simply an attempt to lay a predicate to prove facts allegedly occurring during the time he occupied his official position; not for the purpose of proof of previous misconduct. The Judge's refusal to answer the propounded question was ill-advised.

### THE FINDING OF NOT GUILTY OF CONTEMPT

■ Contempt is defined by statute, 21 O.S.1971, § 565, as follows:

"Contempts of court shall be divided into direct and indirect contempts. Direct contempts shall consist of disorderly or insolent behavior committed during the session of the court and in its immediate view, and presence, and of the unlawful and wilful refusal of any person to be sworn as a witness, *and the refusal to answer any legal or proper question;* * * * *"

By its very statutory definition, there can be no contempt of the Council on Judicial Complaints for refusal to answer a legal or proper question. This is why the legislature provided in 20 O.S.Supp.1974, § 1658[4], that as to contempts not affecting the maintenance of order, it shall certify the matter to the Chief Justice of the Supreme Court who shall assign the case for trial and appropriate disposition to a judge of a district court. The district judge must determine if the question is proper, and if there is no justifiable grounds for the refusal to answer, the district judge to whom the matter is assigned can then proceed against the witness as and for contempt. And in the event the witness be found guilty for refusal to answer the legal and proper question, proper punishment may be imposed by the district judge.

We therefore conclude that the trial judge assigned to hear the matter, erroneously ruled the question to be non-germane. It was a relevant preliminary question essential to establishing a major point of the inquiry: the relationship between the judge and a former law partner.

■ The court's finding that under all the facts and circumstances the refusal to answer was not contemptuous because it was based on advice of counsel, and there was no legal precedent in this jurisdiction upon which either the Council or Judge Anonymous could rely, was erroneous. We point out to the learned trial judge that it has always been the rule in the vast majority of jurisdictions in the United States that if a witness refuses to answer a question on advice of counsel, and the attorney's advice proves to be in error, the witness risks contempt. See: *United States v. Snyder, 428 F.2d 520 (9 Cir. 1970), cert. den. 400 U.S. 903, 91 S.Ct. 139, 27 L.Ed.2d 139.*

■ Although the Judge-witness did not invoke the Fifth Amendment privilege against self-incrimination, much colloquy was had between the attorney and the court below concerning his right to refuse to answer on grounds of self-incrimination. Judge Anonymous maintains that he is afforded the right of freedom from self-incrimination and the Council on Judicial Complaints concedes, unequivocally, that the witness can avoid testifying before the Council on Judicial Complaints if he takes the Fifth Amendment privilege in an affirmative manner. In proceedings before the Council, there cannot be a Fifth Amendment "blanket" privilege, so that a witness can refuse to testify altogether, but he must assert the privilege on each question as it is asked. See, *Quinn v. United States, 349 U.S. 155, 75 S.Ct. 668, 99 L.Ed. 964 (1955).*

We therefore vacate the adjudication by the assigned district judge finding the witness "not guilty" of contempt; the witness is obligated to answer the question before

---

4. See, Fn. 2.

the Council on Judicial Complaints; and the matter is further remanded to the Council on Judicial Complaints of Oklahoma for proceedings not inconsistent with the views expressed in this opinion.

JUDGMENT OF THE TRIAL COURT VACATED. CASE REMANDED TO THE COUNCIL ON JUDICIAL COMPLAINTS WITH DIRECTIONS.

LAVENDER, V. C. J. (Acting Chief Justice), and WILLIAMS, IRWIN and BARNES, JJ., and ROMANG, REYNOLDS and CORNISH, Special Judges, concur.

DOOLIN, J., not participating.

HODGES, C. J., and BERRY, J., certified their disqualification in this cause.