Dear Council on Judicial Complaints Rabon,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
Is the Council on Judicial Complaints empowered by theConstitution of Oklahoma to impose discipline as provided by 20O.S. 1658(F) (1999), which mandates a fine not to exceed $1,000against a complainant or a witness, including a judicial officer,who reveals to the public any information about a proposed orpending judicial complaint?
¶ 1 Your question concerns the constitutionality of a recent legislative change to the duties imposed on the Council on Judicial Complaints, an executive agency created by statute to investigate complaints against judges subject to the Court on the Judiciary. See 20 O.S. 1651 (1999). Your concern is that the Council's imposition of a penalty for breaching confidentiality pursuant to 20 O.S. 1658(F)(2) (1999) may infringe upon the exclusive jurisdiction of the Court on the Judiciary to hear and decide cases on the removal from office or compulsory retirement of state judges. Although not raised, another issue is whether this statute violates the free speech provisions of theFirst Amendment of the United States Constitution and Article II, Section 22 of the Oklahoma Constitution. As background for the analysis of these issues, it may be helpful to review the statutory and constitutional provisions that prompted your question before analyzing Section 20 O.S. 1658(F) and addressing its constitutionality.
 I. RELATIONSHIP BETWEEN THE COURT ON THE JUDICIARY AND THE COUNCIL ON JUDICIAL COMPLAINTS
¶ 2 The Court on the Judiciary has "sole and exclusive jurisdiction to hear and determine causes" for the removal from office or compulsory retirement of state judges for certain specified causes. OKLA CONST. Article VIIA, Section 2(a). The Court is divided into a Trial Division and an Appellate Division. The jurisdiction of the Trial Division is invoked by a petition filed by the Oklahoma Supreme Court, Chief Justice, Governor, Attorney General, or Executive Secretary of the Oklahoma Bar Association, or by Resolution of the OBA House of Delegates or the State House of Representatives. See OKLA. CONST. art. Article VII-A, Section 4(a). The judgment rendered by the Trial Division may not extend further than removal from office, with or without disqualification to hold any public office in the State, or compulsory retirement.[1] See OKLA. CONST. ArticleVII-A, Section 4(d). "No sanction properly can be imposed by the Court on the Judiciary beyond that which is directly relevant to a declaration of judicial unfitness. . . . The essence of the sanction is not `punishment' but present and future exclusion from office based on grounds bearing rational relationship to the interest of the state in the fitness of its judicial personnel."Sharpe v. State ex rel. Oklahoma Bar Ass'n, 448 P.2d 301, 307
(Okla. Jud. A.D. 1968). The Appellate Division may affirm, modify or reverse the judgment of the Trial Division, or enter a new judgment, as justice may require. See OKLA. CONST. ArticleVII-A, Section 5(c).
¶ 3 Article VII-A of the Oklahoma Constitution, which vests jurisdiction over removal of judges in the Court on the Judiciary, does not contain any provisions relating to the investigation of complaints against judges. The Legislature created the Council on Judicial Complaints to conduct such investigations for the following stated reasons:
 1. To afford a means for efficiently and impartially investigating complaints by any person concerning the conduct of persons occupying positions subject to the jurisdiction of the Court on the Judiciary;
 2. To provide an agency which can determine whether such complaints should:
 a. be made the subject of action before the Court on the Judiciary for the purpose of removal, reprimand, or admonition, or
b. be dismissed;
 3. To provide means for procuring necessary information to enable the agency to perform its functions, including the power to issue and enforce subpoenas to testify or to produce tangible evidentiary materials; and
 4. To better the administration of justice in this state through the means enumerated in Section 1651 through 1662 of this title.
20 O.S. 1651 (1999).
¶ 4 The Council must promptly investigate all complaints received by it and determine their proper disposition. See 20O.S. 1658(A) (1999). The Council has the power to "hold hearings, administer oaths or affirmations, receive testimony and other evidence, and issue and serve or cause to be served subpoenas requiring testimony or the production of books, records, papers or other tangible evidence." 20 O.S. 1658(B) (1999). However, the Council cannot act on its findings but rather, in the event it finds that the complaint should be made the subject of proceedings before the Court on the Judiciary, must refer its papers and findings concerning its investigation to the Supreme Court, Governor, Attorney General, Oklahoma Bar Association or House of Representatives, each of which has the discretionary authority to file a petition invoking the jurisdiction of the Court on the Judiciary in accordance with Article VII-A of the Oklahoma Constitution. See 20 O.S. 1659
(1999).
¶ 5 The Council lacks the power on its own initiative to invoke the jurisdiction of the Court on the Judiciary. See Haworth v.Court on the Judiciary, Trial Div., 684 P.2d 1217, 1218-19
(Okla. Jud. 1975), wherein the Court held that 20 O.S. 1659 (1971) was unconstitutional to the extent that it imposed a mandatory duty on the Attorney General to file a Petition invoking the jurisdiction of the Court on the Judiciary when directed to do so by the Council on Judicial Complaints. "With respect to judicial misconduct permissible inquiry by the Council is similar in nature to that of a grand jury inquest." Nicholsv. Council on Judicial Complaints, 615 P.2d 280, 281 (Okla. 1980).
 II. SECRECY OF PROCEEDINGS BEFORE THE COUNCIL ON JUDICIAL COMPLAINTS
¶ 6 The Council, an agency of the Executive Department, is not subject to the Open Meeting Act when conducting, discussing, or deliberating any matter relating to a complaint. See 20 O.S.1652(C) (1999); 25 O.S. 304(1) (1999). The Council's proceedings are to "be held in secrecy to the same extent as proceedings before a grand jury." 20 O.S. 1658(F)(1) (1999). Secrecy of grand jury proceedings is governed by 22 O.S. 341
(1991), which provides, "Every member of the grand jury must keep secret whatever he himself or any other grand juror may have said or in what manner he or any other grand juror may have voted on a matter before them." A grand juror, district attorney, clerk, judge or other officer who, except when required by a court, willfully violates the secrecy of a grand jury proceeding is guilty of a misdemeanor. See 21 O.S. 583 (1991).
¶ 7 Statutes governing multicounty grand juries have similar secrecy provisions, which are applicable to "a grand juror, attomey, interpreter, stenographer, operator of any recording device, or any typist who transcribes recorded testimony." 22O.S. 355(A) (1991). Any person who discloses any information which he or she has sworn to keep secret may be held in contempt of court. See id. Secrecy does not apply to witnesses unless so provided by the presiding judge. See 22 O.S. 355(C) (1991). A law prohibiting a grand jury witness from disclosing his own testimony after the grand jury's term has ended was held unconstitutional as violating the First Amendment in Butterworthv. Smith, 494 U.S. 624 (1990).
¶ 8 The secrecy statutes for grand juries apply only to the jurors and other officers and employees present to assist them, such as interpreters, attorneys, and stenographers. As the Council is subject to the same secrecy requirements as the grand jury, the secrecy of the Council's proceedings as mandated by Section 20 O.S. 1658(F)(1) extends solely to the Council members and anyone assisting them, such as their counsel and investigators, and not to witnesses, the complainant, or the judge under investigation.
¶ 9 By rule, the Council requires witnesses to agree under oath "not to disclose the pendency of the proceeding or the identity of the judge being investigated." 20 O.S. Supp. 1999, ch. 22, app.1, 376:10-1-6(c). Significantly, the rule does not apply to the substance ofthe witness's testimony, but only to the fact that the proceeding is pending and the identity of the judge. InCouncil on Judicial Complaints v. Maley, 607 P.2d 1180, 1186
(Okla. 1980), the Court ruled that the complaint is a confidential document over a newspaper publisher's argument that Section 1658(F) only applies to the Council's `proceedings." The Court agreed that the initiating complaint is not included in the provisions of Section 1658 as part of the `proceedings," but found that the complaint is confidential under the Council's rules. The Court found that it would be absurd for the complaint to be an open record while the hearing is conducted in secret.See id. at 1186.
 III. 1999 AMENDMENTS TO SECTION 20 O.S. 1658(F)
¶ 10 Prior to the 1999 amendments to Section 1658, the secrecy of the Council's proceedings was limited to that of a grand jury proceeding and there were no statutory penalties for disclosing information about the Council's investigations.[2] In its most recent session, the Legislature added subsections (2) and (3) to Section 1658(F), which imposed a duty of confidentiality upon witnesses, the complainant, and the judge subject to investigation, and mandated penalties for breaching this duty as follows:
 "1. All proceedings under this section shall be held in secrecy to the same extent as proceedings before a grand jury.
 "2. A complainant or a witness appearing before the Council who reveals or causes to be revealed to the public any information about a proposed or pending judicial complaint shall be subject to a fine not to exceed One Thousand Dollars ($1,000.00). The Council on Judicial Complaints shall promulgate rules pursuant to the Administrative Procedures Act governing proceedings under this subsection.
 "3. In addition to the fine provided for in paragraph 2 of this subsection, any judicial officer who reveals or causes to be revealed any information about a proposed or pending judicial complaint shall be subject to public reprimand by the Court on the Judiciary."
20 O.S. 1658(F) (1999).
¶ 11 The language used in Subsections (2) and (3) of Section 1658(F) is clear. "The plain meaning of statutory language is conclusive except in the rare case in which literal construction will produce a result demonstrably at odds with the intention of the Legislature." City of Tulsa v. State ex rel. PublicEmployees Relations Bd., 967 P.2d 1214, 1220 (Okla. 1998) (quoting ABC Rentals of San Antonio, Inc., v. Comm'r of InternalRevenue, 142 F.3rd 1200, 1207 (10th Cir. 1998)). Section 20O.S. 1658(F)(2) not only added penalties for breach of confidentiality, but also increased the scope of the confidentiality requirement beyond that applicable to grand jury proceedings. This subsection requires the Council to impose a fine against "a complainant or a witness appearing before the Council who reveals or causes to be revealed to the public any information about a proposed or pending judicial complaint." 20O.S. 1658(F)(2) (1999). In addition to the fine, judicial officers who reveal any information about a proposed or pending judicial complaint are subject to a public reprimand by the Court on the Judiciary. See 20 O.S. 1658(F)(3) (1999).
 IV. LEGISLATION AUTHORIZING THE COUNCIL ON JUDICIAL COMPLAINTS TO IMPOSE FINES FOR VIOLATING THE CONFIDENTIALITY OF THE COUNCIL'S PROCEEDINGS DOES NOT INFRINGE ON THE JURISDICTION OF THE COURT ON THE JUDICIARY
¶ 12 Your question is whether the Council has been empowered by the Oklahoma Constitution to impose discipline as provided in 20O.S. 1658(F)(2) (1999). The concern is that this section may infringe upon the jurisdiction of the Court on the Judiciary to impose discipline relating to judicial fitness for office. Although the Council has not been specifically empowered by the Constitution to impose fines, as explained more fully below, such authorization is not necessary if the legislative grant of authority does not conflict with any constitutional provision. We start with the general rule that Legislative acts are presumed to be constitutional and are upheld unless they are clearly inconsistent with the Constitution. See Reherman v. OklahomaWater Resources Bd., 679 P.2d 1296, 1300 (Okla. 1984). Acts of the Legislature are constitutionally valid "unless they are shown beyond a reasonable doubt to violate the Constitution." City ofBethany v. Public Employees Relations Bd., 904 P.2d 604, 613
(Okla. 1995).
¶ 13 Prior to the 1999 amendments, it was well settled that the Council on Judicial Complaints possessed neither adjudicatory authority nor power to impose sanctions. See Council on JudicialComplaints v. Maley, 607 P.2d 1180, 1183 (Okla. 1980). "The Council is not a body with authority to adjudicate any matter, but rather it is limited to Investigation of judges against whom formal complaint is made." In re "Judge Anonymous,"590 P.2d 1181, 1185 (Okla. 1978). A fine imposed pursuant to Section 1658 is both the imposition of a sanction and requires adjudication.[3] However, there is no constitutional provision that prevents the Legislature from giving the Council the power to adjudicate or impose sanctions as long as such powers do not conflict with the exclusive jurisdiction granted to the Court on the Judiciary in the Constitution.
¶ 14 Boards, agencies and commissions established by statute may be granted the power to exercise adjudicative authority or render decisions in individual proceedings. See OKLA. CONST. Article VII, Section 1. Noting that each branch of government on occasion executes powers that belong primarily to one of the other two departments, the court in Tweedy v. Oklahoma Bar Ass'n,624 P.2d 1049, 1053-54 (Okla. 1981), observed, "If these functions are not, by express constitutional delegation, set apart to another division of government and so long as they can be compatibly combined in one institution, they are held to remain within the sphere permitted by fundamental law."
¶ 15 Here, the Court on the Judiciary has "express constitutional delegation" to exercise exclusive jurisdiction over causes relating to the removal or forced retirement of state judges. See OKLA. CONST. Article VII-A, Section 2(a). However, proceedings before the Court on the Judiciary "shall not bar or prejudice any other proceeding, civil or criminal, authorized by law." OKLA. CONST. Article VII-A, Section 4(d). The Legislature may confer jurisdiction over matters relating to state judges to agencies other than the Court on the Judiciary as long as the matter does not relate to fitness to hold judicial office. For example, in State ex rel. Oklahoma Bar Ass'n v. Haworth,593 P.2d 765, 766 (Okla. 1979), the Court held, "The bar has jurisdiction to entertain a complaint filed against one of its members that touches on present fitness to practice law based on acts occurring during member's incumbency as a judge . . . such action is independent of any action by the Court on the Judiciary." Another example is that in the event of a contemptuous refusal to obey the Council's lawful orders, jurisdiction is in the district court, rather than the Court on the Judiciary. See 20 O.S. Supp. 1999, 1658(E). In In Re "Judge Anonymous," 590 P.2d 1181 (Okla. 1978), when the judge against whom the complaint was lodged refused to answer the Council's questions, the alleged contempt was assigned to the district court for trial and disposition. The Court noted that the district judge must determine if the question is proper, and if there is no justifiable grounds for the refusal to answer, the district judge to whom the matter is assigned can then proceed against the witness for contempt See id. at 1189.
¶ 16 The Court on the Judiciary has not been granted any jurisdiction over the conduct of proceedings before the Council on Judicial Complaints, other than the legislative grant of authority over actions concerning the validity and applicability of the Council's rules. See 75 O.S. 250.4(A)(9) (1999). Likewise, the Legislature has not attempted to give the Council any adjudicatory authority over matters resting within the jurisdiction of the Court on the Judiciary; that is, adjudication relating to a judge's fitness to hold office. The Council is not authorized to impose any type of discipline upon judges for the causes for the removal or forced resignation of judges as set forth in the Constitution, but is only authorized to impose penalties for disclosure of the Council's own confidential proceedings. The statute does not infringe upon the jurisdiction of the Court on the Judiciary to impose discipline related to fitness to hold judicial office. The Legislature may authorize the Council to impose penalties for breaching the confidentiality of the Council's proceedings, subject to the First Amendment limitation described below.
 V. SECTION 1658(F) ENCOMPASSES SPEECH PROTECTED BY THE FIRST AMENDMENT
¶ 17 Although Section 20 O.S. 1658(F)(2) does not conflict with the constitutional grant of jurisdiction to the Court on the Judiciary, the imposition of fines against witnesses, the complainant or the judge under investigation for disclosing "any information about a proposed or pending judicial complaint" is an overly broad abridgment of speech and thus violates theFirst Amendment of the United States Constitution ("Congress shall make no law . . . abridging the freedom of speech") and Article II, Section 22 of the Oklahoma Constitution ("Every person may freely speak, write, or publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press").
A. Rules and Presumptions Governing Statutory Analysis under theFirst Amendment
¶ 18 The usual presumption favoring the constitutional validity of legislation generally is not operative against the statutory restriction of the freedoms secured by the First Amendment. SeeState ex rel. Dep't of Transp. v. Pile, 603 P.2d 337, 340
(Okla. 1979). "A major purpose of the First Amendment is to protect the free discussion of governmental affairs." State exrel. Oklahoma Bar Ass'n v. Porter, 766 P.2d 958, 966 (Okla. 1988) (holding the right of free speech precludes censuring an attorney for criticizing a judge in the absence of a showing of falsity). Where a prohibition is directed at speech itself and the speech is ultimately related to the process of self-government, the state may prevail only upon showing a compelling interest. See id. at 967. The means chosen to further the compelling interest must be narrowly tailored to avoid unnecessary abridgment of speech. See id. at 968. The state may impose reasonable time, place, and manner restrictions to further significant governmental interests but only if the restriction is necessary to prevent a grave and immediate danger to interests the state may lawfully protect. See State ex rel. Dep't of Transp. v. Pile, 603 P.2d 337, 340 (Okla. 1979) (holding that a statute prohibiting billboards along state highways did not cover non-commercial speech, thus avoiding constitutional doubt as to its validity).
¶ 19 In the First Amendment area, an overly broad statute may be declared unconstitutional even if the speech of the person challenging the statute could be regulated by a statute drawn with the requisite narrow specificity. See Broadrick v.Oklahoma, 413 U.S. 601, 612 (1973). The overbreadth doctrine has not been invoked when a limiting construction has been or could be placed on the challenged statute. See id. at 613. A penal provision violates the overbreadth doctrine when, as drafted or construed, it is susceptible of applications to speech that is protected by the First and Fourteenth Amendments. SeeConchito v. City of Tulsa, 521 P.2d 1384, 1386 (Okla.Crim. 1974) (holding a Tulsa city obscenity ordinance unconstitutional as overly broad and not susceptible to a narrowing construction that would preserve its validity).
B. State Interests Supporting Confidentiality of Judicial Complaint Investigations
¶ 20 Since Subsections 20 O.S. 1658(F)(2) and (F)(3) punish the disclosure of "any information" about a proposed or pending judicial complaint, which is a prohibition directed at speech relating to government, the statute can only be upheld if there is a showing of compelling state interest and if it is narrowly tailored to avoid unnecessary abridgment of speech. In Councilon Judicial Complaints v. Maley, 607 P.2d 1180, 1185 (Okla. 1980), the Court noted that most jurisdictions provide for confidentiality in the investigation of complaints against judges up to the point when a formal complaint is filed (citingLandmark Communications v. Virginia, 435 U.S. 829 (1978)). The Court cited Landmark's finding that confidentiality of an inquiry commission's proceedings advanced the following interests: (1) Encourages the filing of complaints and the willing participation of relevant witnesses by providing protection against possible retaliation or recrimination; (2) Protects judges from the injury which might result from publication of unexamined and unwarranted complaints; (3) Promotes confidence in the judiciary as an institution by avoiding premature announcement of groundless claims of judicial misconduct or disability; and (4) Facilitates the work of the commission in that judges are more likely to voluntarily resign or retire without the necessity of formal proceedings if publicity can be avoided and judges can be made aware of minor complaints without public notice. See id. at 1185-86.
¶ 21 In Maley, holding that the complaint lodged against a judge with the Council is a record required by law to be kept secret, the Court noted that public access to the subject matter of a meritorious complaint is assured at the time it is ripe for adjudication — when a complaint is filed with the Court on the Judiciary. See id. at 1187. In a concurring opinion, Justice Opala noted that although protection of fundamental values must, in some instances, be considered paramount to the state's policy of affording anonymity to a judicial officer under investigation, no persuasive showing had been made in this case in favor of lifting the veil of secrecy for the sake of giving recognition to some inexorable command of the constitution. See id.
C. Constitutional Limits on Restricting the Speech of Witnesses and Complainants
¶ 22 While states may provide for the secrecy of investigations of judicial complaints, there are limits on the extent to which the State may punish disclosure of information relating to the complaint. Several federal courts have addressed the constitutionality of imposing penalties upon complainants and witnesses in such proceedings. These cases illustrate that while a state may prohibit the disclosure of certain information about a judicial complaint, it cannot prohibit the disclosure of "any information" on the part of witnesses and the complainant.
¶ 23 In ruling on the constitutionality of a Virginia statute, the United States Supreme Court held the First Amendment does not permit the criminal punishment of third persons who are non-participants in proceedings before a judicial review commission for divulging or publishing truthful information regarding the Commission's confidential proceedings. The Court observed that most states and the District of Columbia have some type of judicial inquiry and disciplinary procedures, all of which provide for the confidentiality of such proceedings, although in most states the confidentiality extends only to the point when a formal complaint is filed with the State Supreme Court or equivalent body. See Landmark Communications v.Virginia, 435 U.S. 829, 834 (1978). The Court noted that unlike the generalized mandate of confidentiality, the imposition of criminal sanctions for its breach was not a common characteristic of state plans at that time, with only Virginia and Hawaii providing criminal sanctions for disclosure. See id.
at 836-37.
¶ 24 After Landmark, Virginia amended its statute to eliminate penalties against "any person" who divulged confidential information. The revised confidentiality statute applied to Commission agents and employees and to the complainant and witnesses.[4] The statute was challenged in Baugh v.Judicial Inquiry Review Comm'n, 907 F.2d 440 (4th Cir. 1990). The issue was whether Virginia could punish a person who filed a complaint with the Commission for disclosing the fact that a complaint had been filed and the action taken by the Commission. The trial court had upheld the statute based upon a substantial interest test. On appeal, the court held that the statute must be tested against "the most exacting scrutiny" and the Commission must demonstrate that the confidentiality provision "is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." Id. at 445 (quoting Boos v. Barry, 485 U.S. 312, 321 (1988)). On remand, the district court found it unconstitutional for the state to prohibit complainants from disclosing the fact that they had filed a complaint with the Judicial Conduct Commission and from discussing the content ofthe witness's own testimony. See Bryan Keyt, Reconciling the Need for Confidentiality in Judicial Disciplinary Proceedings with the First Amendment, 7 Geo.J. LEGAL ETHICS, 959, 975 (1994) (citing Baugh v. Judicial Inquiry Review Comm'n, No. 88-0867, 1991 U.S. Dist. LEXIS 15810, at 1. (E.D. Va. Jan. 31, 1991)).
¶ 25 A similar conclusion was reached in Doe v. State ofFlorida Judicial Qualifications Comm'n, 748 F. Supp. 1520, 1529
(S.D. Fla. 1990), in which the court held that a prohibition against disclosing the fact that a complaint had been filed with the Judicial Qualifications Commission violates theFirst Amendment. However, in Kamasinski v. Judicial Review Council,44 F.3d 106, 110 (2d Cir. 1994), the court held that under theFirst Amendment, the State may not prohibit an individual from disclosing the substance of the individual's complaint or testimony, but may bar the disclosure of the fact that a judicial complaint was filed or the fact that testimony was given in a judicial complaint proceeding.
¶ 26 Despite the differences of opinion on whether an individual may disclose the fact a complaint was filed or the fact that testimony was given, federal appellate courts that have considered the question agree that a state may not prevent witnesses in a judicial complaint proceeding from disclosing their own testimony. See Kamasinski, 44 F.3d at 110; see alsoFirst Amendment Coalition v. Judicial Inquiry and Review Bd.,784 F.2d 467 (3d Cir. 1986) (holding that a regulation preventing subpoenaed nonparty witnesses from disclosing proceedings before the Board violated the First Amendment to the extent it prevented witnesses from disclosing their own testimony, but not to the extent it prevented witnesses from revealing testimony of other witnesses or comments of Board members overheard during their appearances). In First Amendment Coalition, the court observed the State does not impose prohibitions on grand jury witnesses — they are permitted to disclose their own testimony — and that a similar rule in judicial disciplinary proceedings would not substantially impair the Board's function. See id. at 478. Under Kamasinski andFirst Amendment Coalition, a complainant or witness could publicly disclose a judge's unethical behavior but could not disclose that such behavior was the subject of a pending judicial complaint.
D. Application of the Statute to a Judge under Investigation
¶ 27 Section 20 O.S. 1658(F)(3) provides that in addition to a fine, any judicial officer who reveals "any information about a proposed or pending judicial complaint" is subject to public reprimand by the Court on the Judiciary. Under the holdings cited in the previous section, it is clear that it would be unconstitutional to punish a judge for disclosing the substance of his own testimony before the Council. Moreover, since one of the main reasons for the secrecy of judicial investigations is the protection of the judge under investigation, it is very unlikely that a statute providing penalties against a judge for disclosing either the fact that a complaint had been filed against him or her, or the substance of the complaint, could withstand strict scrutiny.
¶ 28 In discussing First Amendment Coalition, a district court recently observed "surely this protection extends not only to the complainants and other interested parties, but also to the judges themselves to marshal their own explanation or defense." McBrydev. Committee to Review Circuit Council Conduct DisabilityOrders of the Judicial Conf. of the U.S., 1999 WL 1288686, at 37
(D.D.C. Dec. 30, 1999). The court noted "while the confidentiality provision in the Act and its state counterparts serves a variety of legitimate state interests-protecting the judge from spurious criticism, the judiciary as an institution from disrepute, and witnesses and complainants from unwanted publicity — the paramount interest is that of the subject judge."Id. at 40 (holding that the confidentiality clause as applied to the subject judge violates the First Amendment). See also In re Buford, 577 S.W.2d 809, 825 (Mo. 1979) (holding that a judge generally does not violate the confidentiality requirement by making public the fact that he is the subject of a disciplinary investigation).
E. The Restrictions on Speech in Section 20 O.S. 1658(F) Are Not Narrowly Tailored
¶ 29 As the cases in the previous sections demonstrate, courts that have considered the question unanimously hold that statutes preventing witnesses from disclosing their own testimony, or a complainant from disclosing the substance of the complaint, violate the First Amendment; courts are split, however, on the question of whether a State may prohibit a complainant from disclosing the fact that he or she filed a complaint. The penalties imposed by Subsections 20 O.S. 1658(F)(2) and 20O.S. 1658(F)(3) for disclosure of "any information about a proposed or pending judicial complaint" would apply to a complainant, witness, or judge who made any of the following disclosures while a complaint was `proposed or pending": (1) an individual's intent to file a complaint, the fact that he or she had filed a complaint, and the contents of the complaint; (2) the fact of a witness's testimony in a proceeding before the Council, as well as the substance of the testimony; and (3) the fact that a complaint had been filed against a judge, the facts underlying the complaint, and the judge's own testimony in the proceeding. The abridgement of speech would last only so long as the complaint was pending; however, courts that have considered the question have held that there is no compelling reason that would allow the State to prevent witnesses from disclosing their own testimony, or a complainant from disclosing the contents of the complaint. "Whether the state may prohibit the disclosure of the substance of an individual's complaint or testimony merits little discussion. Penalizing an individual for publicly disclosing complaints about the conduct of a government official strikes at the heart of the First Amendment, and we agree with the district court that such a prohibition would be unconstitutional."Kamasinski, 44 F.3d at 110 (citations omitted).
¶ 30 Section 1658 has not been narrowly tailored to avoid unnecessary abridgement of speech. Oklahoma's Ethics Commission rules are an example of confidentiality rules that have been narrowly drawn in apparent consideration of First Amendment guarantees. The Ethics Commission has been analogized to the Council on Judicial Complaints as both agencies possess similar functions of investigation and referral. See Walters v. OklahomaEthics Comm'n, 746 P.2d 172, 175 (Okla. 1987). The Ethics Commission imposes secrecy obligations upon its officers and employees, but its rules narrowly define the secrecy obligation of witnesses and do not prohibit the respondent from disclosing any information about its investigation. See 74 O.S. Supp. 1999, ch. 62, app., 257:1-1-12 and 257:30-1-3. As to witnesses, the Commission rules provide as follows:
 "No person who has provided information to the Commission or has knowledge that the Commission is undertaking an investigation shall disclose:
 "(1) his knowledge that an investigation has been undertaken;
 "(2) any information he obtains as a result of having submitted information or interacted with the Commission in connection with a particular investigation; or
 "(3) the fact that he testified to or filed information with the Commission, or otherwise participated in the Commission investigation."
74 O.S. Supp. 1999, ch. 62, app., 257:30-1-3(i).[5]
¶ 31 These rules follow the Kamasinski holding in that a witness could publicly disclose unethical conduct of a public officer, but could not disclose that an investigation of such officer was pending. The subject of the investigation may disclose any information about the investigation. "If the Respondent discloses the contents of an information or the fact that an information has been filed against him or her, any provisions of this Chapter prohibiting disclosure of the information by the Commission may be waived and the information and written correspondence between the Respondent and the Commission's staff or independent contractors may be open for public inspection." 74 O.S. Supp. 1999, ch. 62, app., 257:30-1-3(i).
¶ 32 Although the Legislature may provide for the confidentiality of proceedings of the Council on Judicial Complaints, any restriction on speech relating to the conduct of a government official must be narrowly tailored to serve a compelling state interest. There are no compelling interests to support penalties against a judge under investigation for disclosing a pending proceeding, since the primary purpose of confidentiality is to protect the subject judge. While the State may preclude individuals from disclosing that they have given testimony in a judicial complaint proceeding, it cannot prevent them from disclosing the substance of their testimony because to do so would violate their right to speak publicly concerning the conduct of government officials. Subsections 1658(F)(2) and 1658(F)(3) are not narrowly tailored and infringe uponFirst Amendment rights to the extent they (1) preclude judges from disclosing that a complaint has been filed against them, the substance of the complaint, or their own testimony before the Council, or (2) preclude witnesses or complainants from disclosing the substance of their testimony or complaints. The statute is overly broad and is not susceptible to a construction that would make it constitutional.[6]
 ¶ 33 It is, therefore, the official Opinion of the AttorneyGeneral that:
 The power of the Council on Judicial Complaints to imposefines pursuant to 20 O.S. 1658(F)(2)-20 O.S. 1658(F)(3)(1999) against individuals for violating the confidentiality ofthe Council's investigatory proceedings does not infringe on thejurisdiction of the Court on the Judiciary. However, these twosubsections, which impose penalties against a complainant, awitness, or a judge under investigation for disclosing "anyinformation" about a proposed or pending judicial complaint, areunconstitutional by virtue of being overly broad and notsusceptible to a narrowing construction; they encompass speechprotected by the First Amendment of the United StatesConstitution, as well as Article II, Section 22 of the OklahomaConstitution, as follows:
 1. Section 20 O.S. 1658(F)(2) penalizes complainants andwitnesses for disclosing the substance of their complaints ortestimony in a judicial complaint proceeding, and thus infringeson a citizen's right to speak publicly about the conduct ofgovernment officials, which is a core First Amendment value.While the State may impose limited restrictions on witnesses andcomplainants relating to the Council's proceedings, such as thefact that testimony has been given, the State cannot prohibitspeech concerning the subject matter of the complaint orproceeding, such as the conduct of the judge underinvestigation.
 2. Section 20 O.S. 1658(F)(3) penalizes judges fordisclosing any information about complaints filed against them,which would include (a) that complaints have been filed, (b) thesubstance of the complaints, and (c) the judges' testimony beforethe Council. Abridgments of political speech are subject to thestrictest scrutiny and will only be upheld for compellingreasons. There are no compelling reasons for imposing penaltiesagainst the judge under investigation for disclosing informationabout a complaint in light of the fact that a primary reason forthe confidentiality of Council proceedings is for the protectionof the judge. Moreover, the prohibition seriously impairs ajudge's ability to marshal a defense to a complaint.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
KATHRYN BASS ASSISTANT ATTORNEY GENERAL
[1] The legality of perpetually disqualifying a judge, who has not been convicted of any crime, from holding "any public office" was questioned in both State ex rel. Williams v. Haworth,551 P.2d 676, 679 (Okla. Jud. A.D. 1976), and Sharpe v. State exrel. Oklahoma Bar Ass'n., 448 P.2d 301, 307 (Okla. Jud. A.D. 1968) on the grounds of invidious discrimination.
[2] In the event that a witness did not comply with the confidentiality oath required by rule, the Council could presumably treat such noncompliance as contempt and refer the matter to the Chief Justice of the Supreme Court for assignment to a district court judge pursuant to 20 O.S. 1658(E) (1998). See In Re "Judge Anonymous," 590 P.2d 1181, 1189 (Okla. 1978).
[3] Section 20 O.S. 1658(F)(2) directs the Council to promulgate rules to govern proceedings under this section as the imposition of a fine requires an adjudicatory proceeding to satisfy due process. See OKLA. CONST. Article II, Section 7. While the Council is not required to comply with Article II of the APA, which governs individual proceedings See 75 O.S.250.4(B)(9) (1999), any Council ruling relating to the imposition of a fine would be subject to judicial review by the district court pursuant to 12 O.S. 951(a) (1999).
[4] The statute allowed the judge under investigation to disclose information pertaining to a complaint as necessary for the judge to investigate and prepare for the proceedings. SeeBaugh, 907 F.2d at 443.
[5] Prior law provided, "No person shall disclose the contents of a complaint, his intention to file a complaint, the fact that a complaint has been filed or his knowledge of another person's intention to file a complaint; provided, the respondent may disclose the entire contents of a complaint and any related materials at any time in the proceedings." 74 O.S. 4207(F) (1991) (repealed 1995).
[6] As an exception to the general rule that Attorney General Opinions are binding upon state agencies, the Oklahoma Supreme Court has held that an Attorney General Opinion stating that an act of the Legislature is unconstitutional is advisory only. SeeYork v. Turpen, 681 P.2d 763, 767 (Okla. 1984).